Dale A. CRULL and Theresa M. Crull, husband and wife, Plaintiffs–Appellants,

v.

GEM INSURANCE COMPANY, a Utah corporation, Defendant–Appellee.

No. 94–15159.

United States Court of Appeals, Ninth Circuit.

Submitted * June 14, 1995.

Decided June 29, 1995.

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

Jan E. Cleator, Phoenix, AZ, for plaintiffs-appellants.

Leslie A. Kresin, Marscal, Weeks, McIntyre & Friedlander, Phoenix, AZ, for defendant-appellee.

Before: GOODWIN, FARRIS, and KLEINFELD, Circuit Judges.

GOODWIN, Circuit Judge:

The plaintiffs' employer "established" an "employee welfare benefit plan" under ERISA. The plaintiffs sued the insurer to recover benefits allegedly owed them under the plan. They pled their claims under state law, but those claims were preempted by ERISA. The plaintiffs also requested that their state law claims be treated as claims for relief under ERISA's civil enforcement scheme. The District Court granted summary judgment to the defendant without considering the plaintiffs' alternate request. We remand to permit the District Court to consider whether the plaintiffs are entitled to relief under ERISA's civil enforcement scheme.

## BACKGROUND

Dale Crull is an employee of Picture Perfect Electronic Contracting, Inc. ("Picture Perfect"). In 1990, Picture Perfect resolved to obtain health insurance for its employees. To that end, Picture Perfect entered into a "Trust Subscription Agreement and Application for Group Insurance" (the "Subscription Agreement") with Inter–Mountain Employer's Trust ("IMET"). IMET is a "multiple employer trust." A multiple employer trust is an entity established to procure group insurance coverage for otherwise unrelated employers. By aggregating their buying power, these unrelated employers can negotiate for better health insurance programs. In this case, IMET pooled the premiums from all its subscribers and purchased a group insurance policy from GEM Insurance Company ("GEM").

Pursuant to the Subscription Agreement, Picture Perfect paid Crull's insurance premiums directly to IMET. Crull contributed, through payroll deductions, seventy-five percent of the premium payments; Picture Perfect absorbed the cost of the other twenty-five percent. Picture Perfect expressly "agree[d] that it is the administrator of the [insurance plan] as that term is contemplated under ERISA." As administrator, Picture Perfect

> agree[d] that its responsibilities include, but are not limited to, remitting contributions on the employee's behalf, notifying employees of eligibility requirements, effective dates of changes in coverage, termination of coverage, conversion privileges, and providing certificate booklets to employees promptly upon receipt.

GEM sent a package to Picture Perfect containing materials to be distributed to the employees. Picture Perfect was obliged to distribute to its employees Certificate Booklets explaining the benefits provided by the plan and the process for submitting claims, as well as various applications and forms for obtaining, extending, or continuing benefits. Picture Perfect was also required to provide its employees with instructions on the procedure for filling out and submitting the documents required for the administration of the plan.

In June, 1991, Dale Crull underwent surgery. He was hospitalized for a time, and required follow-up care until September, 1991. His medical expenses ran to nearly $100,000. GEM denied coverage and rescinded Crull's policy.

The Crulls proceeded to the Superior Court for Maricopa County, Arizona, and filed a complaint against GEM alleging, *inter alia*, that Dale Crull's medical expenses are covered by the terms of the policy. The Crulls pled their various claims under state law. GEM responded that the Crulls' claims are completely preempted by federal law under the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.* (1988 ed. and Supp. V), and removed the case to the United States District Court for the District of Arizona. *Metropolitan Life Ins. Co. v.*

*Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

The District Court ruled that the GEM policy is an ERISA "employee benefit plan," and that ERISA preempts the Crulls' state law claims. Although the Crulls contended that, should the district court find their state law claims preempted, their complaint should be regarded as raising a claim for relief under ERISA's civil enforcement scheme, the district court entered summary judgment for GEM without addressing that contention.

## DISCUSSION

ERISA preempts all state law claims that "relate to any employee benefit plan...." 29 U.S.C. § 1144(a). Accordingly, we first must determine whether an "employee benefit plan" exists in this case.

### I.

Under ERISA, an "employee benefit plan" is either an "employee welfare benefit plan" or an "employee pension benefit plan," or both. 29 U.S.C § 1002(3). *See Silvera v. Mutual Life Ins. Co. of New York,* 884 F.2d 423, 425 (9th Cir.1989). The insurance plan offered by GEM in this case has nothing to do with pensions, so the likely statutory candidate is "employee welfare benefit plan." 29 U.S.C. § 1002(1) defines "employee welfare benefit plan" as

> any plan, fund, or program which ... is ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

*See Silvera,* 884 F.2d at 425; *Kanne v. Connecticut Gen. Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir.1988) (per curiam) (as amended). We agree with the District Court that Picture Perfect established a plan to help Dale Crull obtain health insurance, and that this plan constitutes an ERISA "employee welfare benefit plan."

The Crulls disagree. They point out that a plan is an ERISA "employee benefit plan" only if it is "established or maintained by an employer or by an employee organization, or both." With that we agree. The Crulls then argue that IMET is not a statutory "employer" or "employee organization." *See* 29 U.S.C. §§ 1002(4), 1002(5). We have held that a multiple employer trust comprised of heterogenous, unrelated employers is not an ERISA employer. *Credit Managers Ass'n v. Kennesaw Life & Acc. Ins.,* 809 F.2d 617, 625 (9th Cir.1987). We need not resolve IMET's status as an "employer" under ERISA, however.

IMET's status is not dispositive so long as Picture Perfect qualifies as an ERISA employer.[1] This observation sets up the Crulls' second argument. They argue that Picture Perfect is not an employer for purposes of ERISA regulation because Picture Perfect merely arranged for a group-type insurance program for its employees. As authority, they cite *Taggart Corp. v. Life & Health Benefits Admin.,* 617 F.2d 1208 (5th Cir. 1980), which held that ERISA does not regulate "bare purchases of health insurance where ... the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits." 617 F.2d at 1211.

We have held, however, that "[e]ven if an employer does no more than arrange for a 'group-type insurance program,' it can establish an ERISA plan, unless it is a mere advertiser who makes no contributions on behalf of its employees." *Credit Managers Ass'n,* 809 F.2d at 625 (applying Department of Labor ("DOL") regulations that establish the conditions under which an employer's purchase of group insurance on behalf of its employees does *not* establish an "employee

---

1. Therefore, the district court did not abuse its discretion in denying the Crulls' motion for a continuance under Fed.R.Civ.P. 56(f) to discover what the dealings and relationships were between Picture Perfect and IMET. *See Int'l Alliance v. Compact Video Services, Inc.,* 50 F.3d 1464, 1466 (9th Cir.1995) (Denial of rule 56(f) motion not an abuse of discretion where the movant failed to show how additional discovery would have related to a material issue).

welfare benefit plan" for purposes of ERISA, 29 C.F.R. § 2510.3–1(j) (1987)).[2]

■ In this case, Picture Perfect paid twenty-five percent of the premiums for each of its employees. An employer who pays a portion of an employee's premiums can be expected to recoup that cost by paying the employee an otherwise lower wage, and for this reason there is little economic difference (excepting tax consequences) between in-kind payments of health insurance and deductions from an employee's payroll. Nevertheless, the DOL's regulations and our precedents recognize an employer's payment of a portion of the insurance premium as a significant factor for determining the existence of an ERISA plan. Picture Perfect also expressly agreed to act as "the administrator of the plan as that term is contemplated under ERISA." This fact "evidenc[es] the intent of [Picture Perfect] to create an ERISA plan." *Kanne*, 867 F.2d at 493. Finally, Picture Perfect undertook numerous administrative tasks, including making payroll deductions, distributing plan information to its employees, instructing its employees on the procedure for filling out and submitting plan documents, and notifying its employees about any changes in the plan.

We agree with the District Court that, applying our precedents to the undisputed facts of the case, this issue was appropriate for resolution on summary judgment. *Kanne*, 867 F.2d at 493 (court decides the issue); *Silvera*, 884 F.2d 423 (same). Under the standard established by our precedents, Picture Perfect's actions are sufficient to show the establishment of an ERISA "employee welfare benefit plan." *Credit Managers*, 809 F.2d at 625.

## II.

Having determined that an "employee welfare benefit plan" exists in this case, we next determine whether ERISA preempts the Crulls' state law claims. Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). Section 502(a) provides, in pertinent part, that

A civil action may be brought—

(1) by a participant or beneficiary—

.    .    .    .    .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

29 U.S.C. § 1132(a).

■ This court, following the lead of the Supreme Court, *see e.g., Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), has read the words "relates to" expansively. Consequently, on similar facts, we have held that state law claims of estoppel, waiver, breach of contract, quasi estoppel, and bad faith—all claims raised by the Crulls' complaint—"relate to" an "employee welfare benefit plan" because they represent attempts to recover benefits allegedly owed under the plan. *See Davidian v. Southern California Meat Cutters Union and Food Employees Benefit Fund,* 859 F.2d 134, 135 (9th Cir.1988); *Nevill v. Shell Oil Co.,* 835 F.2d 209, 212 (9th Cir.1987); *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1095 (9th Cir.1985); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1356 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). Those cases keep faith with the Supreme Court's admonition that "the civil enforcement provisions of ERISA § 502(a) [are] the exclusive vehicle for actions by ERISA–plan participants and beneficiaries

---

**2.** An employer's purchase of group insurance on behalf of its employees shall not establish an "employee benefit plan" for purposes of ERISA if (but not only if) no contributions are made by an employer, participation in the plan is completely voluntary for employees, and the sole functions of the employer with respect to the programs are, without endorsing the program or receiving compensation beyond a reasonable fee for administrative services, to permit the insurer to publicize the program to employees, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer. 29 C.F.R. § 2510.3–1(j) (1987). "[B]ehavior inconsistent with any one of the above criteria would constitute evidence of the establishment of a plan." *Silvera,* 884 F.2d at 426; *Kanne,* 867 F.2d at 492.

asserting improper processing of a claim for benefits...." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987).

We are aware that the Supreme Court has recently revisited the question when state regulation "relates to" an employee welfare benefit plan. *See New York State Conference of Blue Cross & Blue Shield Plans, et. al. v. Travelers Insurance Company,* — U.S. —, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). We have considered what effect, if any, that case may have on the precedents we have cited in the preceding paragraph, and we have concluded that they remain good law.[3] We therefore agree with the District Court that the Crulls' state law claims are preempted under ERISA.

### III.

In their motion opposing summary judgment, the Crulls asked that, should the District Court find their state law claims preempted, they be given relief under ERISA's civil enforcement scheme instead, 29 U.S.C. § 1132(a). The District Court did not address this request. This was error. GEM does address the Crulls' request, arguing that because the Crulls had styled their claims as state law claims, and ERISA completely preempts those claims, the Crulls must file a new complaint expressly invoking ERISA in order to proceed with their lawsuit. The assumption underlying GEM's position is that, under the Federal Rules of Civil Procedure, summary judgment should be entered against a plaintiff simply because the plaintiff's lawyer has misconceived the proper legal theory of the claim at the pleadings stage, even if the plaintiff is entitled to

relief on some other legal theory. We disagree with that assumption.

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The pleadings need only identify the basis of the court's jurisdiction, demand for judgment for the relief sought, and contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8. The pleadings need not identify any particular legal theory under which recovery is sought. *Elec. Const. & Maintenance Co., Inc. v. Maeda Pacific Corp.,* 764 F.2d 619, 623 (9th Cir.1985). The illustrative forms appended to the Rules plainly demonstrate this. *See* Fed.R.Civ.P. 84. The Crulls' complaint alleged that their medical expenses are covered by the terms of the GEM policy, and demanded the coverage called for in the policy. That is adequate under Rule 8.

Having determined that ERISA preempts the Crulls' state law claims, the District Court, consistent with the Crulls' pleadings and other evidence, should have taken up the question of relief under ERISA's civil enforcement scheme. *See Elec. Const. & Maintenance Co.,* 764 F.2d at 623; *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1077–78 (7th Cir.1992). The Crulls requested as much, and their claim falls within the scope of ERISA's enforcement scheme, for it seeks "to recover benefits due ... under the terms of [the] plan...." 29 U.S.C. § 1132(a). Whether, once all the evidence is considered, the Crulls

---

**3.** In *Travelers Insurance,* the Supreme Court held that a New York state surcharge on hospital bills paid by commercial insurers and HMOs did not "relate to" employee benefit plans within the meaning of ERISA's preemption provision. "[L]ook[ing] ... to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," *Travelers Insurance,* — U.S. at—, 115 S.Ct. at 1677, the Court concluded that Congress did not intend for ERISA to preempt state regulation that, like New York's surcharge on hospital bills, affected the price of insurance policies only "indirectly"

and did not operate to "effectively restrict" the choice of policies available in the market.

*Traveler's Insurance* may well signal the present Justices' unhappiness with the rather sweeping deregulatory effect that an expansive reading of the words "relate to" has had. It does not, however, signal a retreat from *Pilot Life's* holding that the civil enforcement provisions of ERISA § 502(a) were intended by Congress to be exclusive. Claims to enforce the terms of an employee welfare benefit plan "relate to" the plan, and are preempted under ERISA.

are entitled to damages is a question we leave to the District Court to answer on remand.

## IV.

Picture Perfect "established" an "employee welfare benefit plan" for purposes of ERISA. The Crulls' state law claims for benefits allegedly owed them under the plan are completely preempted by ERISA. On remand, the District Court shall consider whether, viewing the evidence in the light most favorable to the Crulls, the Crulls may be entitled to relief under ERISA's civil enforcement scheme. Neither party is entitled to attorney's fees for this appeal under 29 U.S.C. § 1132(g)(1) because neither party has yet succeeded on some significant issue in this litigation. *Flanagan v. Inland Empire Elec. Wkrs. Pension Plan,* 3 F.3d 1246, 1253 (9th Cir.1993).

AFFIRMED IN PART, VACATED AND REMANDED IN PART.